UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STUART E. FAGAN and SUSAN L. FAGAN, | ) | |
| | ) | |
| Plaintiffs, | ) | 16 C 5426 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| CAPITAL ONE, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Stuart and Susan Fagan brought this diversity suit against Capital One, alleging that it violated Illinois law during the pendency of their home loan application. Doc. 9. Capital One has moved to dismiss the suit under Federal Rule of Civil Procedure 12(b)(6). Doc. 26. The motion is granted in part and denied in part.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in the Fagans' brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). The facts are set forth as favorably to the Fagans as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at the pleading stage,

1

the court does not vouch for their accuracy.  *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

In April 2015, Capital One reviewed the Fagans' home loan application and conditionally agreed to a $417,000, 30-year fixed rate mortgage at an annual interest rate of 3.625%.  Doc. 9 at 2.  At that point, the Fagans would have been subject to a $450 fee if they withdrew their application.  *Id*. at 3.  On April 25, Lacea Renta, a Capital One mortgage loan officer, told Stuart that the interest rate was locked for 60 days and requested documents to start processing the loan.  *Ibid*.  The Fagans submitted all requested documents within the 60-day period.  *Ibid*.

Capital One assigned Michael Schneider, a Dedicated Loan Specialist, to assist the Fagans with the loan processing phase.  *Ibid*.  On May 11, Schneider told Stuart in an email that Capital One had verified enough liquid funds for the Fagans to close the loan.  *Id*. at 3-4.  On May 13, Stuart provided Schneider with copies of his 2014 federal and state income tax returns.  *Id*. at 4.  On May 15, Schneider emailed Stuart a list of the outstanding conditions for the loan, which included "proof of extension and extension approval or complete 2014 tax returns."  *Id*. at 5.  Later that day, Stuart notified Schneider that he had just transmitted the requested tax materials to Capital One.  *Ibid*.

The Fagans left for a trip to Europe on May 20.  *Id*. at 7.  They had prearranged with Capital One to sign documents at a U.S. Consulate during the trip.  *Ibid*.  (A May 19 email from Schneider to Stuart reads: "At this point, there are no additional documents that I am needing from you.  The way the closing will work, is your title company will be sending you the documents by either e-mail or fed-ex to sign.  You would then bring them to the US Embassy to have them notarized and mail them back to your title company."  *Ibid*.)  On May 22, while the Fagans were overseas, Capital One sent a "Statement of Credit Denial, Termination or Change"

2

to their home in Wheaton, Illinois. *Ibid*. The letter stated that Capital One had denied the Fagans' loan application because their debt obligations were excessive relative to their income. *Ibid*. On May 23, before the Fagans learned of that letter, Capital One asked them to provide another copy of their 2014 tax extension request. *Ibid*. The Fagans promptly complied. *Ibid*.

On June 2, Renta told Stuart that Capital One either had denied or was going to deny the loan application because of instability in his income. *Id*. at 8. Renta stated that Stuart's 2014 income had not been taken into consideration because he had filed a tax return extension. *Ibid*. Renta was "being deceptive" during this conversation, because Capital One's true motive in denying the application was to induce the Fagans to reapply for a loan at a higher interest rate—interest rates on 30-year fixed rate mortgages had been rising, and they continued to rise until August. *Id*. at 3, 8-9.

The Fagans asked Capital One to reconsider their loan application in light of Stuart's 2014 and 2015 income. *Id*. at 9. On June 5, Renta asked Stuart to send her the Fagans' 2014 tax returns. *Ibid*. Stuart did not have easy access to his tax documents while in Europe, but reminded Schneider via email that he had already submitted his 2014 returns. *Id*. at 10. Schneider did not respond. *Ibid*. On June 11, Stuart emailed Renta to tell her that he had uploaded another copy of his 2014 returns to the Capital One website; he also attached the returns to the email. *Ibid*. Stuart spoke to another Capital One employee, Sean Knudsen, on June 18. *Id*. at 11. Knudsen told Stuart that there was no record of Capital One having received the 2014 returns. *Ibid*. The next day, Renta told Stuart via email that she had no record of having received the 2014 returns and that she could not open the 2014 returns attached to his email. *Ibid*.

On June 19, Stuart sent Renta a link to his 2014 tax returns. *Id*. at 12. Renta initially responded that the link did not work, but she later confirmed that she could access the returns. *Ibid*. On June 24, Renta asked Stuart to explain the discrepancy between his 2013 and 2014 income, and he did so promptly. *Id*. at 13. On June 29, Renta emailed Stuart: "It looks as if we are not able to reactivate the loan, but the underwriter has told me that [your] income and reasoning is ok. I can start a new application at closest pricing I can get to what you originally were locked in at. I should be able to get you at 3.75% as this is the lowest rate I have available on the rate sheet." *Ibid*. As noted, the original rate offered to the Fagans was 3.625%. *Id*. at 2.

On July 13, Renta told Stuart that the closure of the loan application was not the Fagans' fault. *Id*. at 14. Renta then offered to open a new loan application at a higher interest rate—this time 3.875%—and Stuart declined. *Ibid*. Stuart reached out to Renta on July 15 to ask what rate Capital One could offer at that time, and Renta offered 4%. *Id*. at 15. The Fagans ultimately secured a home loan through another lender. *Ibid*.

## Discussion

The complaint asserts four claims: (1) common law fraud; (2) deceptive practices under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*.; (3) breach of contract; and (4) breach of the implied covenant of good faith and fair dealing. *Id*. at 16-17. The Fagans have withdrawn their good faith and fair dealing claim, Doc. 30 at 1 n.2, so it is dismissed.

### I. Common Law Fraud Claim

"The elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5)

plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996); *see also Geschke v. Air Force Ass'n*, 425 F.3d 337, 345 (7th Cir. 2005) (same). A fraud plaintiff in federal court must comply with Rule 9(b), which provides that "[i]n alleging fraud …, a party must state with particularity the circumstances constituting fraud …." Fed. R. Civ. P. 9(b). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011); *see also Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) ("[T]he reference to 'circumstances' in the rule requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.") (some internal quotation marks omitted).

In its opening brief, Capital One challenges only whether the complaint: (1) alleges that it made a false statement; (2) alleges that it had the requisite intent; and (3) satisfies Rule 9(b). Doc. 26-1 at 3-8. All other grounds for dismissal, including those made for the first time in Capital One's reply brief, are forfeited. *See G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (internal citations omitted); *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) (observing that "the district court is entitled to find that an argument raised for the first time in a reply brief is forfeited"). The three arguments that Capital One has made are meritless.

5

First, the complaint alleges that Capital One made a false statement. Specifically, it alleges that Renta, a Capital One loan officer, falsely stated that Stuart's 2014 income had not been considered before Capital One denied the loan, when in fact Capital One had considered his income and denied the loan in an intentional effort to induce the Fagans to reapply at a higher interest rate. Doc. 9 at 8; *see also* Doc. 30 at 3-5.

Second, the complaint alleges that Capital One made that statement with the "intent that [it] induce the plaintiff to act" by reapplying at a higher rate. *Connick*, 675 N.E.2d at 591. Capital One's false statement that Stuart's 2014 income was not considered before it denied the loan application enabled it to justify its denial (because it purportedly had no proof of an adequate 2014 income) *and* motivate the Fagans to reapply (because Stuart knew that his 2014 income was adequate). Doc. 9 at 8. Moreover, Renta's statement that the Fagans' 2014 "income … is ok"—which confirmed that the reason for Capital One's prior denial would not pose a problem on a future application—was immediately followed by her offer to "start a new application" for the Fagans at a 3.75% interest rate, which was higher than the 3.625% rate initially offered. *Id*. at 13. Taken together, those allegations indicate that Capital One intended Renta's false statement to induce the Fagans to reapply for a loan at a higher rate.

Third, the Fagans have satisfied Rule 9(b)'s particularity requirement. The complaint provides a meticulous account of the Fagans' communications with Capital One regarding the loan application, including Renta's allegedly fraudulent statement during a phone call with Stuart on June 2 that Stuart's 2014 income had not been taken into consideration when Capital One denied the loan application. *Id*. at 8. That level of detail sufficiently conveys "the 'who, what, when, where, and how' of the fraud" alleged. *AnchorBank*, 649 F.3d at 615. The Fagans' common law fraud claim accordingly survives.

6

**II.     ICFA Claim**

The "ICFA is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (internal quotation marks omitted). It provides, in relevant part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

A private plaintiff seeking to state an ICFA deceptive practices claim must allege: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002). Allegations of deceptive acts under the ICFA are subject to Rule 9(b)'s heightened pleading standard. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446-47 (7th Cir. 2011). Capital One's opening brief challenges only whether the Fagans' complaint: (1) alleges a deceptive practice; (2) alleges that it intended that the Fagans rely on the deception; and (3) satisfies Rule 9(b). Doc. 26-1 at 8-10. The second and third arguments are meritless for the reasons given above in discussing the common law fraud claim; all other grounds for dismissal are forfeited. *See G&S Holdings*, 697 F.3d at 538; *Narducci*, 572 F.3d at 324.

That leaves the first argument. As the Seventh Circuit has directed, "in determining whether the allegations in [the] complaint state [an ICFA] claim for relief that satisfies the

7

requirements of Rule 12(b)(6)," the court must "ask whether the allegedly false and misleading statements on which [the plaintiff] base[s] his [ICFA] claim can be read to create a likelihood of deception or to have the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). The "allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005).

The Fagans base their ICFA claim on Renta's statement to Stuart that Capital One denied or was going to deny the loan without taking into consideration Stuart's 2014 income. Doc. 9 at 8. That statement was deceptive because it created a likelihood that the Fagans would believe that Renta was being truthful and, as a result, would reapply for a loan at a higher rate. *See Bober*, 246 F.3d at 938. Indeed, the complaint alleges that the Fagans actually *were* deceived by Renta's statements; they scrambled to resubmit their tax documents in an effort to salvage their loan application, Doc. 9 at 10-12, and, once Renta made clear that the old application would not be revived, they inquired about a potential new loan application, *id*. at 15.

### III. Breach of Contract Claim

"The required elements of a breach of contract claim in Illinois are the standard ones of common law: (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012) (internal quotation marks omitted); *see also Hammarquist v. United Cont'l Holdings, Inc.*, 809 F.3d 946, 949 (7th Cir. 2016) ("To prevail on a breach-of-contract claim in Illinois … the plaintiffs must show that there was a contract between the parties, and that [the defendant] breached the contract by failing to adhere to its terms."). The Fagans' contract claim incorporates all of the complaint's factual allegations

8

by reference and states: "Plaintiffs entered into an agreement with Defendant. Plaintiffs performed all obligations required of them under the agreement. Defendant's breach of the agreement caused damages to Plaintiffs." Doc. 9 at 17. The complaint's only allegations regarding the contract's terms are these:

> On or about April 25, 2015, Defendant reviewed Plaintiffs' application and offered to make Plaintiffs a $417,000, 30-year fixed rate mortgage at an annual rate of 3.625%, with an annual percentage rate of 3.99%. What is more, Plaintiffs were entitled to take up to $1,000 off of their closing costs upon close of escrow. Plaintiffs timely accepted Defendant's offer and agreed to pay certain points and/or fees at settlement. At that point, in the event Plaintiffs had withdrawn their application, then they would have been obligated to pay a $450 fee.

*Id.* at 2-3. But the Fagans' brief opposing dismissal clarifies that their contract claim does not arise from Capital One's failure to comply with these terms. Rather, the Fagans argue: "This case is about the promise that lenders make to process loan applications with fairness. … Did Capital One make Plaintiffs a promise to make them a loan at an agreed-upon rate? No. Rather, Capital One impliedly promised Plaintiffs that it would process Plaintiffs' loan application with fairness." Doc. 30 at 11-12.

The contract claim cannot proceed for the threshold reason that a contract to "process [their] loan application with fairness" is not the contract alleged in the complaint. The complaint does not allege any offer, acceptance, or consideration regarding the "promise" that the Fagans' brief describes. And even if it did, an implied contract term to process their loan application "with fairness" is too indefinite and uncertain to be enforceable. *See Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 589 (7th Cir. 2012) ("[I]f essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract."). The Fagans' assertion that Capital One beached an implied promise to process their loan application with fairness appears to be an attempt to repackage their implied covenant of

9

good faith and fair dealing claim, which is not viable under Illinois law. *See Wilson v. Career Educ. Corp.*, 729 F.3d 665, 687 (7th Cir. 2013) (noting that "the covenant of good faith and fair dealing is not an independent source of duties for the parties to a contract" under Illinois law and that "vague notions of fair dealing do not form the basis for an independent tort") (internal quotation marks omitted); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1444 (7th Cir. 1992) ("[I]n Illinois the obligation of good faith and fair dealing is not a separate obligation upon which a cause of action may be based."). Accordingly, the Fagans have failed to "state a colorable breach of contract claim under Illinois law." *Fednav Int'l Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 839 (7th Cir. 2010); *see also Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 528 (7th Cir. 2003) ("Voelker, however, does not point to any allegations in the complaint that would satisfy the elements of a contract. … We therefore affirm the district court on the ground that Voelker has failed to allege the existence of a valid and enforceable contract between himself and another.").

Capital One also contends that the Fagans' contract claim is barred by the Illinois Statute of Frauds, 740 ILCS 80/2. Doc. 26-1 at 13-14; Doc. 34 at 8-9. The Fagans fail to respond to the statute of frauds argument, thereby forfeiting the point and, along with it, their contract claim. *See G&S Holdings*, 697 F.3d at 538; *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("We apply [the forfeiture] rule where a party fails to develop arguments related to a discrete issue, and we also apply that rule where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss. … Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (internal quotation marks omitted); *Bonte*

*v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as the Bontes have done here—results in waiver.").

**Conclusion**

Capital One's motion to dismiss is granted as to the Fagans' contract and implied covenant of good faith and fair dealing claims, and denied as to their common law fraud and ICFA claims. Capital One shall answer the surviving portions of the complaint by May 19, 2017.

May 5, 2017

_____
United States District Judge